Filed 2/5/15  P. v. Ghoston CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>YOLANDA GHOSTON,<br><br>  Defendant and Appellant. | B249929<br><br>(Los Angeles County<br>Super. Ct. No. TA120625) |

APPEAL from a judgment of the Superior Court of Los Angeles County.   Ricardo R. Ocampo, Judge.  Affirmed as modified.

Gail Ganaja, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General and Peggy Z. Huang, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Yolanda Ghoston (defendant) challenges her convictions arising from identity theft and theft from an elderly man because the trial court admitted evidence that she did nearly the same thing to another elderly man to prove her identity, intent and a common scheme or plan. The trial court did not abuse its discretion in admitting this evidence. We affirm the conviction, but require that the abstract be corrected on a handful of issues.

### FACTS AND PROCEDURAL BACKGROUND

Defendant met Javier Fernandez (Fernandez) along a public walkway near the Queen Mary. Fernandez was a 63-year-old widower who lived alone and had significant health issues. Seeing Fernandez in distress, defendant offered to help. The next day, she again encountered Fernandez near the Queen Mary. This time, she followed him home. Within a week, she offered to help him around the house, moved in with him, and asked to borrow $600 ($400 to fix her car, and $200 to buy marijuana). Within a month of meeting Fernandez, defendant was rifling through his financial documents. She took Fernandez's debit card without his knowledge or permission while he was hospitalized for eight days, and used it to make more than 25 purchases and ATM withdrawals totaling about $5,000, including withdrawals from an ATM at the International Longshoreman Credit Union (defendant worked as a longshoreman). After Fernandez's release from the hospital, defendant was caught on video buying two televisions with his debit card. When Fernandez reported the unauthorized use of his card, defendant was arrested; from her purse, police seized a trove of documents in Fernandez's name—a DMV registration card, title to a vehicle, a quitclaim deed, an insurance policy, and a blank check that also had Fernandez's deceased wife's name on it. Her purse also contained a property tax bill addressed to Fernandez's deceased wife and a small baggie of morphine.

The People charged defendant with identity theft (Pen. Code, § 530.5, subd. (a)) [1] (count 1), two counts of second degree commercial burglary (§ 459) (counts 2 & 3), theft

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

from an elder or dependant adult by a caretaker (§ 368, subd. (c)) (count 4), theft of an access card (§ 484e, subd. (d)) (count 5), grand theft (§ 484g, subd. (a)) (count 6), and possession of a controlled substance (§ 11350, subd. (a)) (count 7). After defendant threatened Fernandez with violence as he waited to testify at her preliminary hearing, the People also charged her with attempting to dissuade a witness (§ 136.1, subd. (a)(2)) (count 8). The People further alleged that defendant's 2000 conviction for robbery (§ 211) was a "strike." (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)[2]

Defendant went to trial. The jury convicted her on all counts, and found the prior "strike" allegation to be true. The trial court sentenced defendant to state prison for 13 years 4 months, the consecutive aggregation of eight years for theft from an elder or dependant adult, four years for attempting to dissuade a witness, and 16 months for possession of a controlled substance. The court stayed the sentence on the remaining counts pursuant to section 654.

Defendant appeals.

## DISCUSSION

### I.    Prior uncharged conduct

At trial, the People introduced evidence that defendant engaged in similar conduct in the years leading up to the charged conduct with Foster Henry (Henry), a widower in his 70's who had health issues. Defendant approached Henry in a public place (a grocery store); befriended him; moved in with him; looked through his financial papers without his permission; took his car and wallet without his permission; used his checks, ATM card, and credit cards to make purchases without his permission; and ultimately threatened him with harm if he pressed charges on the police reports he had made. The People sought to introduce this evidence to prove that defendant engaged in a common plan or scheme, but the trial court ultimately admitted it for three purposes: (1) to prove a

---

[2]    The People also alleged that Fernandez was over age 60 (§ 1203.09, subd. (f)), but that issue was not submitted to the jury or factored into his sentence.

3

common plan or scheme; (2) to prove identity; and (3) to prove defendant's intent to steal.

The People may not generally introduce evidence that a criminal defendant engaged in prior uncharged conduct to prove her character or propensity for engaging in such conduct. (Evid. Code, § 1101, subd. (a).) However, the People may introduce prior uncharged conduct to prove matters other than propensity, such as an identity, intent or a common plan or scheme. (*Id.*, § 1101, subd. (b) [enumerating permissible purposes]; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 203.) To be admissible as so-called "1101(b) evidence," a court must find that (1) the purpose for which the uncharged acts are offered is relevant to the pending case (*People v. Daniels* (1991) 52 Cal.3d 815, 857-858), (2) the uncharged acts are sufficiently similar to the charged crime that the evidence has a tendency to prove the purpose for which it is offered (*People v. Lindberg* (2008) 45 Cal.4th 1, 22 (*Lindberg*); *People v. Ewoldt* (1992) 7 Cal.4th 380, 402-403 (*Ewoldt*), superseded on other grounds by Evid. Code, § 1108), and (3) the probative value of the evidence is not substantially outweighed by the "substantial dangers of undue prejudice, of confusing the issues or of misleading the jury" (Evid. Code, § 352; *Lindberg*, at pp. 22-23).

Defendant argues that the trial court should have excluded her prior acts regarding Henry because (1) two of the three purposes for which it was admitted (namely, identity and common plan or scheme) were not at issue in the pending case once she admitted she was the person on the video buying the TVs, (2) her conduct with Henry lacked the requisite degree of similarity to the charged crimes, and (3) the prejudicial impact of the uncharged evidence substantially outweighed its probative value.[3] We review the admission of this evidence for an abuse of discretion. (*People v. Harris* (2013) 57 Cal.4th 804, 841.) There was no abuse here.

---

[3]    Defendant does not challenge admission of the facts underlying her 2000 robbery conviction.

4

Evidence of uncharged conduct adduced to prove identity or common plan or scheme is used to prove that the defendant was the person who committed the charged *acts*: If the prior act committed by the defendant shares "distinctive marks" with the charged crime, this helps prove that she committed the charged act. (*People v. Earle* (2009) 172 Cal.App.4th 372, 393-394.) The same is true when the uncharged act committed by the defendant was undertaken using a design or plan sharing a "concurrence of common features" with the plan used to commit the charged offense(s). (*People v. Kelly* (2007) 42 Cal.4th 763, 784; *Ewoldt*, *supra*, 2 Cal.4th at p. 403.) Although defendant admitted she was the person on the video buying the TVs (she testified she had Fernandez's permission to do so), defendant denied that she was the person who made some of the other charges and ATM withdrawals, or who put all of Fernandez's documents in her purse. Thus, defendant's fraud upon Henry was relevant to many of her fraudulent *acts* against Fernandez.

We reject defendant's contention that her conduct with Henry was not similar enough to the charged offenses. The requisite level of similarity depends upon the purpose for which the evidence is admitted. On this spectrum, identity requires the highest level because the uncharged and charged conduct must share "distinctive marks"; a common plan or scheme must evince a "concurrence of common features"; and acts admitted to prove intent need only have "sufficient similarity." (*Ewoldt*, *supra*, 2 Cal.4th at pp. 402-403.) The degree of similarity between what defendant did to Henry and to Fernandez is striking—as the trial court put it, "eerie"—and meets any of these standards.

The trial court also did not abuse its discretion in balancing the probative value of evidence involving Henry against the dangers of unfair prejudice. The evidence was "highly probative" to prove that defendant was the person who committed the acts she denied, and to prove she acted with the intent to steal (rather than with Fernandez's permission). (*People v. Miller* (2000) 81 Cal.App.4th 1427, 1448 [uncharged acts properly admitted to prove intent].) Although the evidence was surely prejudicial to defendant (as is most evidence the People seek to introduce), it was not *unfairly* so. The

5

severity of the uncharged acts were not worse than the charged offenses, and was ostensibly less because defendant and Henry had a sexual relationship that arguably made her conduct more reasonable. The trial court further mitigated any danger by instructing the jury of the limited purposes for which the evidence was offered.

## II.    Fees

The People argue that the trial court erred in imposing the $30 criminal conviction assessment (Gov. Code, § 70373) and $40 court security fee (Pen. Code, § 1465.8) for only three of the eight counts (counts 1, 4, and 7) of which defendant was convicted. We may correct a trial court's failure to impose a mandatory fee on appeal. (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530.) Because the assessment and fee were due on each count of conviction, we order the clerk of the superior court to prepare an amended abstract of judgment that reflects a total of $240 in criminal conviction assessments ($30 for each count) and $320 in court security fees ($40 for each count). (*People v. Chan* (2005) 128 Cal.App.4th 408, 425-426.)

## III.    Abstract of judgment

The People further argue that the abstract of judgment is inaccurate for two reasons: (1) it reflects conviction by plea, not jury, on counts 1, 2, 3, 4, 7 and 8; and (2) it does not reflect the doubling of the sentences imposed on counts 4, 7 and 8 due to the prior "strike." We may correct clerical errors contained in the abstract of judgment to accurately reflect the judgment of the sentencing court. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We accordingly order that the abstract of judgment be amended (1) to reflect that defendant was convicted by jury, and (2) to indicate that defendant was sentenced to eight years in count 4, 16 months in count 7, and four years in count 8.

## DISPOSITION

The abstract of judgment is modified as follows: a $30 criminal conviction assessment pursuant to Government Code section 70373, subdivision (a) should be imposed on each count, for a total of $240; and a $40 court security fee pursuant to section 1465.8 should be imposed on each count, for a total of $320. The abstract is also

corrected to reflect conviction by jury on each count, and the sentences imposed as eight years in count 4, 16 months in count 7, and four years in count 8.  The clerk of the Superior Court is directed to prepare an amended abstract of judgment reflecting these changes and to forward a certified copy of the amended abstract to the California Department of Corrections and Rehabilitation.  Otherwise, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

7